AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br>PRATEK BHUPENDRABHAI PATEL<br><br>*Defendant(s)* | )<br>)<br>)   Case No. 3:24-mj-00092<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 7, 2024__ in the county of __Greene__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1343 | Wire Fraud |
| 18 U.S.C. Section 1349 | Attempt and Conspiracy |
| 18 U.S.C. Section 1344(2) | Bank Fraud |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Benjamin P Adducchio     Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone (reliable electronic means).

Date: February 8, 2024

_____
Caroline H. Gentry
United States Magistrate Judge

City and state: Dayton, Ohio

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Benjamin Adducchio, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I am a Special Agent (SA) with the United States Secret Service (USSS). As such, I am an investigative and law enforcement officer of the United States within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I have been employed by the USSS as a SA since September of 2020. I am currently assigned to the USSS Dayton Resident Office, which is responsible for investigations involving financial crimes. I have completed approximately 583 hours of instruction at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. Additionally, I have completed 565 hours of training at the USSS John J. Rowley Training Center (JJRTC) in Laurel, Maryland on counterfeit, financial, and cyber related investigations including but not limited to computer fraud, identity theft, and access device fraud. I have also received training on the proper identification, preservation, collection, and investigation of digital devices and storage media, and the USSS certifies me as a digital forensic examiner. I have investigated numerous individuals for a wide variety of federal felony offenses, including computer fraud, access device fraud, child exploitation, counterfeiting, and wire fraud. I have conducted open-source social media research, analyzed financial records, participated in witness and subject interviews, and participated in the execution of warrants to include the search and seizure of electronic communications accounts, to include emails, social media accounts, messaging applications, and other electronically stored information.

2. This affidavit is made in support of an arrest warrant for PRATEK BHUPENDRABHAI PATEL (hereinafter referred to as "PATEL") for Wire Fraud in violation of 18 U.S.C. § 1343, Bank Fraud in violation of 18 U.S.C. § 1344(2), and Conspiracy to Commit Wire Fraud and Bank Fraud, in violation of 18 U.S.C § 1349.

3. Along with other agents, officers, and investigators of the USSS and Fairborn Police Department, I have personally participated in the investigation of PATEL and others, as discussed below. The facts in this affidavit come from my personal observations and investigation along with information obtained from witness testimony and the investigations of other agents.

4. This Affidavit does not contain every fact known to the investigation, but only those deemed necessary to demonstrate sufficient probable cause that PATEL committed the offenses alleged in the complaint.

## PERTINENT FEDERAL CRIMINAL STATUTES

5. 18 U.S.C. § 1343, states it is a violation for any person who, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

6. 18 U.S.C. § 1344(2) states that it is a violation for any person who knowingly executes, or attempts to execute, a scheme or artifice, to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

7. 18 U.S.C § 1349 states that it is a violation for any person who attempts or conspires to commit any offense under 18 U.S.C. Code Chapter 63 shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**FACTS SUPPORTING PROBABLE CAUSE – FAIRBORN, OHIO**

8. E.C. is a 75-year-old resident of Fairborn, Ohio. On or about November 28, 2023, E.C. received an unsolicited phone call from a phone number (480) 542-6162, from an individual claiming to be JENNIFER MOORE from Amazon.com, Inc., advising E.C. of purported suspicious activity on his Amazon account. E.C. was then transferred to a person identified as ERIC MILLER (MILLER) who purportedly worked at the Federal Trade Commission (FTC) and Federal Communications Commission (FCC). MILLER advised E.C. that his financial accounts had been red flagged, and he then transferred E.C. to another individual claiming to be ALVARO BEDOYA (BEDOYA), an officer at the Federal Trade Commission (FTC).

9. BEDOYA provided E.C. with his purported contact phone number of (315) 643-8646 and his federal identification number, 956293. Records obtained by investigators later revealed the provided phone number was registered on October 1, 2023 to Ooma, Inc., which is headquartered in Sunnyvale, California.

10. According to E.C., BEDOYA advised him there were thirty-two (32) bank accounts and seventeen (17) credit card accounts linked to E.C.'s social security number with assets totaling $4.5 million. BEDOYA also advised E.C. that he was under investigation for owning rental properties that are tied to drug activity in multiple states along with possible money laundering activity linking him to $400,000 in illegal transfers to Iran and China. BEDOYA presented E.C. with three (3) options: (a) cooperate with the FTC which would endanger E.C. and his family, (b) fight the charges in federal court, or (c) work with BEDOYA to segregate the clean money from the illicit money by making deposits into United States Government-controlled accounts. BEDOYA instructed E.C. not to discuss the case with anyone and call BEDOYA back on November 30, 2023 at 09:30AM.

11. On or about November 30, 2023, E.C. contacted BEDOYA as instructed. BEDOYA informed E.C. he needed to "legalize" his money by transferring all funds from E.C.'s personal accounts to

U.S. Government accounts. BEDOYA first instructed E.C. to purchase gold bars as one way to "legalize" his money. E.C. was told to utilize a web browser on his personal computer to navigate to https://www.apmex.com, an online precious metal vendor, so he could purchase gold bars; however, E.C. was unable to successfully purchase gold from this site, as it required the use of cryptocurrency to make such purchases. BEDOYA then instructed E.C. to navigate to https://www.jmbullion.com to purchase gold. During the process of establishing an account on JM Bullion, E.C. opened an account with the Bank of Oklahoma, but no funds were transferred to this account because E.C. was uncomfortable having gold bars shipped to his home. Therefore, E.C. informed BEDOYA he could not complete the transaction.

12. BEDOYA then instructed E.C. to obtain a check from his bank in order to facilitate the funds transfer. BEDOYA told E.C. to send him screenshots of E.C.'s Wright-Patt Credit Union (WPCU) account summary and pictures of the cashier's check with receipt. As instructed, E.C. obtained a cashier's check for approximately $149,233.05 from his money market account at WPCU, and then E.C. drove to Chase Bank located at 2687 Fairfield Commons, Beavercreek, Ohio. While waiting in the parking lot outside Chase Bank, BEDOYA requested E.C. send a photo of E.C.'s Ohio driver's license via text message to (315) 643-8646. A short time later, BEDOYA informed E.C. that Chase Bank would not work so they would have to use other means to deposit E.C.'s cashier's check.

13. BEDOYA then requested E.C. to drive to a Bank of America branch located at 710 South Breiel Boulevard, Middletown, Ohio and deposit the check into bank account number 25189330512. E.C. was also told by BEDOYA, if asked, to tell the bank employee the cashier's check was for a real estate investment. Upon arriving at Bank of America, E.C. proceeded into the bank and successfully deposited the $149,223.05 cashier's check into bank account number 25189330512. It was later determined the specified bank account was in fact opened by Emptsy Real Estate LLC. Your affiant has determined that Emptsy Real Estate LLC was established on November 8, 2023 by a Zhenyu SUN in the State of California. E.C.'s cashier's check was successfully negotiated and cleared WPCU on December 2, 2023.

14. Between the dates of November 30, 2023, and December 7, 2023, BEDOYA instructed E.C. to move $15,000 from E.C.'s account held at SAFE Federal Credit Union to E.C.'s WPCU account and another $15,000 from E.C.'s account held at Chevron Federal Credit Union to E.C.'s WPCU account.

15. On or about December 8, 2023, BEDOYA told E.C. it was time to conduct another withdrawal, this time in cash. Following orders given by BEDOYA, E.C. travelled to three (3) different WPCU branches to withdrawal a total of $40,000 in currency. E.C. withdrew $11,500 from his WPCU account at the WPCU Kittyhawk Member Center (WPCU-Kittyhawk) located on the Wright-Patterson Air Force Base; $15,500 at the WPCU Beavercreek Member Center (WPCU- Beavercreek), 1506 North Fairfield Road, Beavercreek, Ohio; and $13,000 at the WPCU Gantt Member Center (WPCU- Gantt) 2465 Executive Park Boulevard, Fairborn, Ohio. Once the money was withdrawn, BEDOYA instructed E.C. to place the $40,000 in a box, put white paper over the top, seal the box, wrap it in white paper, and write "The Court" on the outside. E.C. stated he also wrote his return address in the corner. BEDOYA requested E.C. to provide him with pictures of every step of E.C. packaging the money. Once the packaging process was complete, BEDOYA informed E.C. a "logistics team" would be scheduled to pick up the money at 8:30PM that same night.

16. At approximately 8:30PM, E.C. observed a white SUV with tinted windows pull into the cul-de-sac where he resides and stop at the curb in front of his house. BEDOYA then called E.C. and instructed E.C. to walk to the car and place the package on the rear seat through an open window. As instructed, E.C. walked up to the vehicle and placed the package with $40,000 in cash on the back passenger's seat through an open window on the rear driver's side of the vehicle. E.C. then returned to his residence. E.C. noted it appeared as if there was only one (1) occupant seated in the driver's seat of the vehicle. BEDOYA placed E.C. on hold to verify receipt of the package. When BEDOYA returned to the phone call, the white SUV pulled away from E.C.'s house.

17. On or about December 18, 2023, BEDOYA provided E.C. with a new contact phone number of (202) 217-6941. Further research provided TextNow, Inc. as the issuing organization of (202) 217-6941.

18. On or about December 21, 2023, BEDOYA again instructed E.C. to make additional cash withdrawals. Following orders given by BEDOYA, E.C. travelled to four (4) different WPCU branches to withdrawal a total of $40,000 in currency. E.C. withdrew $10,000 at WPCU- Gantt, $10,000 at WPCU-Kittyhawk, $10,000 at WPCU- Beavercreek, and $10,000 at WPCU Five Points Member Center (WPCU-Five Points) 1298 Dayton-Yellow Springs Road, Fairborn, Ohio. The $40,000 was packaged in the same manner as it was on December 8, 2023, and pictures of the packaging process were taken and sent via text message by E.C. to BEDOYA as instructed. BEDOYA was preparing to send a "logistics team" that same day, however, E.C. received an unexpected visit from family so the pickup was postponed to the next day.

19. On or about December 22, 2023, BEDOYA contacted E.C. to arrange a pickup of the $40,000. E.C. requested they meet at the Discount Drug Mart located at 7617 Dayton Springfield Road, Fairborn, Ohio outside of Enon, Ohio. At approximately 4:00PM, E.C. arrived at the Discount Drug Mart and parked in the back row in the Northeast section of the parking lot. BEDOYA stated the "logistics team" was running behind and requested E.C. wait. A short time later, BEDOYA told E.C. to get out of the vehicle and stand by the driver's side door of his vehicle. E.C. then observed a white SUV with tinted windows pull up next to him and lower the passenger rear window. BEDOYA instructed E.C. via voice call to place the box with $40,000 on the rear seat of the vehicle, and E.C. complied. The sole occupant/ driver of the vehicle thanked E.C. Again, BEDOYA confirmed receipt of the package and then instructed E.C. to return to his vehicle as the white SUV backed out of the parking space and exited the lot heading West on Dayton-Springfield Road.

20. On or about January 5, 2024, E.C. learned from law enforcement that he was a victim of a fraudulent scam and thereafter blocked all numbers related to BEDOYA.

## USSS OPERATION ON FEBRUARY 7, 2024

21. On or about January 26, 2024, your affiant and USSS Task Force Officer (TFO) Shane Hartwell verified E.C. was amenable to reestablishing contact with BEDOYA in order to setup a controlled meeting with whomever was picking up the cash. E.C. agreed and allowed TFO Hartwell to reach out to BEDOYA via text. Almost immediately, E.C.'s phone began to ring. The caller ID displayed a phone number of (202) 217-6941. Per TFO Hartwell's instructions, E.C. answered the phone and asked BEDOYA if his account was settled. BEDOYA stated it was not and they needed another $80,000 in cash. E.C. told BEDOYA he only had approximately $60,000 remaining in his account. BEDOYA told him to get the cash together, package it in the same manner as he did previously, and call when he was ready to meet.

22. On or about February 5, 2024, your affiant and USSS SA Nicholas Ferralli escorted E.C. to four (4) different WPCU branches to withdrawal a total of approximately $60,000 in currency in order to take pictures of receipts showing withdrawal amounts and account balances. E.C. withdrew $15,000 at WPCU- Kittyhawk, $15,000 at WPCU- Beavercreek, $15,000 at WPCU- Gantt, and $15,000 at WPCU- Five Points. After completing the last withdrawal, E.C. deposited all the cash back into his WPCU account returning the balance to $60,000.

23. On or about February 6, 2024, your affiant and TFO Hartwell staged photos of the $60,000 using seized counterfeit from the USSS and created a decoy box which BEDOYA would believe contained the $60,000. Using the staged photos and under the direction of TFO Hartwell, E.C. notified BEDOYA via text message the required funds were obtained. E.C. informed BEDOYA he would be available for a pickup on February 7, 2024 at his place of residence. BEDOYA told E.C. he would schedule a logistics team for February 7, 2024 between the hours of 3:00PM and 5:00PM. BEDOYA instructed E.C. to call (202) 217-6941 at 3:00PM on February 7, 2024.

24. On or about February 7, 2024 at approximately 3:00PM, at the direction of your affiant, E.C. contacted BEDOYA regarding the pickup of $60,000. BEDOYA stated the logistics team was in the area, but he needed a few minutes to coordinate the pickup. After approximately three (3) minutes, BEDOYA returned to the line and stated the logistics team was ten (10) minutes from E.C.'s place of residence. Approximately ten (10) minutes later, BEDOYA instructed E.C. to go outside and stand by his front door with the box of $60,000.

25. At this time, USSS Senior Special Agent (SSA) James Harris stepped out onto the porch of E.C.'s home with the decoy box in hand as BEDOYA instructed. A gray Dodge Challenger (SUBJECT VEHICLE) pulled to the curb in front of E.C.'s home. BEDOYA asked E.C. if he observed the gray two-door vehicle pull up and E.C. confirmed. SSA Harris proceeded to walk from the front porch to the curb and place the decoy box on the front seat of the SUBJECT VEHICLE through the open passenger window. SSA Harris then turned around and walked back to the house and went inside. The SUBJECT VEHICLE pulled away from the curb heading North out of the cul-de-sac. The SUBJECT VEHICLE was then immediately pulled over by officers with the Fairborn Police Department, and the sole occupant of the SUBJECT VEHICLE, later identified as PATEL, was ordered out of the vehicle and detained. It was later determined the SUBJECT VEHICLE was a rental vehicle from Alamo Car Rental.

### SUBJECT INTERVIEW - PATEL

26. PATEL was transported to the Fairborn Police Department headquarters where he was *Mirandized* and interviewed. During his interview, PATEL told investigators he is from the Country of India, and he entered the United States of America on or about August 17, 2023 with his wife and child. PATEL stated his Visa expires on February 17, 2024. PATEL claimed the original purpose of their visit / Visas was to vacation in the United States for approximately twenty-five (25) days; however, during their visit, PATEL'S wife gave birth to their second child. PATEL has been living with his family in the Chicago, Illinois area since coming to the United States. He claims he has been trying to get money together to fly

he and his family home to India for the past several months. PATEL also told investigators he owns a Bridgestone tire dealership with his family back in India.

27. During his interview, PATEL told investigators he was directed by an individual named JECK (no last name), who is allegedly from the country of India, to complete the money pickups. According to PATEL, JECK always provided the pickup addresses and required him to video the collected money. Once the pickup was completed and after a thorough count, PATEL was then instructed to place the money, or in some instances gold, into a backpack and directed to a given parking lot where he would meet another unknown individual. PATEL stated JECK would change his phone number every ten (10) to fifteen (15) days. PATEL believes JECK works with two or three other individuals in India, and the person directing their actions is from Dubai, United Arab Emirates. On February 6, 2024, JECK instructed PATEL via cellular telephone to pick up $60,000 from E.C.'s address on February 7, 2024 between the hours of 2:00PM and 3:00PM. PATEL stated this was his seventh time completing a pickup as instructed by JECK.

28. According to PATEL, PATEL's first pickup was completed in Illinois where he obtained $28,000 from a female victim (VICTIM 1). In that case, PATEL delivered the money to a male (SUSPECT 1) of Indian descent in an Illinois parking lot. PATEL's second pickup also occurred in Illinois where he obtained $30,000 from a different female victim (VICTIM 2) and delivered the money to a different male (SUSPECT 2) in an Illinois parking lot. PATEL's third pickup occurred in Illinois where he obtained two (2) gold bars from a female victim (Victim 3) and again delivered to SUSPECT 2 in an Illinois parking lot. The fourth pickup was completed in Michigan where he obtained an unknown quantity of gold from a female victim (VICTIM 4) which was delivered to another unknown male (SUSPECT 3) of Indian descent. The fifth pickup was also completed in Michigan where he obtained $20,000 from a female victim (VICTIM 5) and delivered to SUSPECT 1 in an Illinois parking lot. The sixth pickup was completed in Cincinnati, Ohio where he obtained $68,000 from a male victim (VICTIM 6) which was delivered to a male (SUSPECT 4) of

Indian descent. PATEL claimed he was given $500 to $1,500 in cash for each successful pickup and drop-off.

29. During the interview, PATEL claimed he traveled to numerous other states to complete additional attempted pickups, however, JECK informed him the victims cancelled those pickups. Other cities and states where PATEL traveled include Philadelphia, Pennsylvania; Houston, Texas; Dallas, Texas; Phoenix, Arizona; Los Angelos, California; San Francisco, California; Vienna, Virginia; Minnesota and Maryland.

30. During the interview, PATEL stated he understood his actions were illegal in the United States of America. Following PATEL's first package pickup, he allegedly conducted a Google search regarding his actions and found articles informing him it was illegal. PATEL stated he needed the money, so he continued working with JECK to pick up boxes of money form elderly victims.

## CONCLUSION

31. Based on my investigation, PATEL, along with other unknown co-conspirators, would communicate with each other and the victims of the fraudulent scheme via communication byway of text message and telephone communications from locations across the United States and internationally, including the Country of India. It is also my belief, victims were instructed to use the internet to complete portions of the scheme, including in this particular case where victim E.M. was instructed to visit the website https://www.jmbullion.com to purchase gold, which E.M. did as instructed. This particular website is hosted on CloudFront, a website service provided by Amazon, where its servers are geographically located in the State of Illinois. Finally, WPCU and Bank of America are both "financial institutions" as defined pursuant to 18 U.S.C. § 20.

32. Based on the totality of the aforementioned factual information, and based upon my prior law enforcement training and experience, I believe there is probable cause to believe that beginning on or about November 28, 2023, in the Southern District of Ohio, and elsewhere, PRATEK

BHUPENDRABHAI PATEL, conspired with others to commit wire fraud and bank fraud, in violation of 18 U.S.C § 1349 and in so doing committed wire fraud in violation of 18 U.S.C. § 1343 and bank fraud in violation of 18 U.S.C. § 1344.

33. I therefore respectfully request that an arrest warrant be issued based upon this criminal complaint.

Respectfully submitted,

_____
Special Agent Benjamin Adducchio
United States Secret Service

Subscribed and Sworn to via reliable electronic means on this 08 of February, 2024.

_____
Caroline H. Gentry
United States Magistrate Judge